UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WILLIAM BRASSEUR,

    Plaintiff,

v.                                              Civil No. 05-CV-10055-BC

COMMISSIONER OF                                 DISTRICT JUDGE DAVID M. LAWSON
SOCIAL SECURITY,                                MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, IT IS RECOMMENDED that PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE DENIED, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED, and that the FINDINGS OF THE COMMISSIONER BE AFFIRMED.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case has been referred to this Magistrate Judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability

insurance benefits. This matter is currently before the Court on cross motions for summary judgment.

Plaintiff was 53 years of age at the time of the most recent administrative hearing and has completed a high school education and an apprenticeship program. (Tr. at 175.) Plaintiff's relevant work history includes over 30 years' work as a pipefitter at Buick Motor Division of General Motors. (Tr. at 74, 176.)

Plaintiff filed the instant claim on August 21, 2001, alleging that he became unable to work on May 3, 2001. (Tr. at 43-45.) The claim was denied initially. (Tr. at 24.) In denying Plaintiff's claim, the Defendant Commissioner considered hernias as possible bases of disability. (*Id.*)

On February 11, 2003, Plaintiff appeared with counsel before Administrative Law Judge (ALJ) Douglas Jones, who considered the case *de novo*. In a decision dated March 25, 2003, the ALJ found that Plaintiff was not disabled. (Tr. at 11-20.) Plaintiff requested a review of this decision on April 9, 2003. (Tr. at 143.)

The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (AC-1-2, Tr. at 143-69), the Appeals Council, on January 28, 2005, denied Plaintiff's request for review. (Tr. at 5-8.) On February 17, 2005, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

**B.      Standard of Review**

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (per curiam). The Commissioner is charged with finding the facts relevant to an application for disability benefits. A federal court "may not try the case de novo, . . . ." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984).

If supported by substantial evidence, the Commissioner's decision is conclusive, regardless of whether the court would resolve disputed issues of fact differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir.1990), and even if substantial evidence would also have supported a finding other than that made by the ALJ. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc). The scope of the court's review is limited to an examination of the record only. *Brainard,* 889 F.2d at 681. "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 681 (citing *Consolidated Edison Co. v. NLFB*, 305 U.S. 197, 229, 59 S. Ct. 206, 216, 83 L. Ed. 2d 126 (1938)). The substantial evidence standard "'presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference from the courts.'" *Mullen*, 800 F.2d at 545 (quoting *Baker v. Heckler*, 730 F.2d 1147, 1149 (8th Cir. 1984)) (affirming the ALJ's decision to deny benefits because, despite ambiguity in the record, substantial evidence supported the ALJ's conclusion).

The administrative law judge, upon whom the Commissioner and the reviewing court rely for fact finding, need not respond in his or her decision to every item raised, but need only write to support his or her decision. *Newton v. Sec'y of Health & Human Servs.*, No. 91-6474, 1992 WL 162557 (6th Cir. July 13, 1992). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) ("a written evaluation of every piece of testimony and submitted evidence is not required"); *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987) (ALJ need only articulate his rationale sufficiently to allow meaningful review). Significantly, under this standard, a reviewing court is not to resolve conflicts in the evidence and may not decide questions of credibility. *Garner,* 745 F.2d at 387-88.

### C.     Governing Law

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen*, 800 F.2d at 537.

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). "[B]enefits are available only to those individuals who can establish 'disability' within the terms of the Social Security Act." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). One is thus under a disability "only if his physical or mental . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

A claimant must meet all five parts of the test set forth in 20 C.F.R. § 404.1520 in order to receive disability benefits from Social Security. The test is as follows:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, benefits are denied without further analysis.
>
> Step Three: If the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled without further analysis.
>
> Step Four: If the claimant is able to perform his or her previous work, benefits are denied without further analysis.
>
> Step Five: If the claimant is able to perform other work in the national economy, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 554 n.2 (6th Cir. 1995); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th

5

Cir. 1994); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 687-88 (6th Cir. 1985). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Preslar*, 14 F.3d at 1110. "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]." *Id.* "Step five requires the [Commissioner] to show that the claimant is able to do other work available in the national economy. . . ." *Id.*

### D.     Administrative Record

A review of the medical evidence contained in the administrative record and presented to the ALJ indicates that in mid-September 2000, Plaintiff complained of having pain and heaviness in the lower right abdomen. (Tr. at 96.) Plaintiff reported that he had had surgical repair of a hernia in the same region approximately one year earlier. He stated that he was lifting a heavy pump out of a coolant system when he felt a pulling sensation in the area. Initial examination indicated the presence of a hernia which was subsequently confirmed by a physician. (*Id.*) In October 2000, Plaintiff underwent the surgical repair of the hernia and was thereafter restricted from lifting over 30 pounds. (Tr. at 95.)

In mid-January 2001, Plaintiff again complained of symptoms consistent with a hernia. It was noted that Plaintiff's previous surgery was primarily exploratory in nature, as the surgeon was unable to find direct evidence of a hernia at that time. (Tr. at 94.) In March 2001, Plaintiff received a follow-up evaluation, and Plaintiff's employer was given a note from a physician restricting Plaintiff's lifting to not more than 20 pounds. (Tr. at 93.) By late March, Plaintiff felt that his condition was slowly worsening. Upon examination, it appeared that Plaintiff was walking with a limping gait and in a very careful fashion. Plaintiff's 20-pound lifting restriction was continued, and Plaintiff was referred to another physician for a second opinion. (Tr. at 92.)

In early May 2001, Dr. Tarik Wasfie performed the surgical repair of a right inguinal hernia. (Tr. at 105.) In reports to Plaintiff's employer in June 2001, Dr. Wasfie recounted his diagnosis and felt that Plaintiff should not work for the next month. (Tr. at 106-107.) Thereafter Plaintiff was restricted to lifting not over 50 pounds for the next three months, a restriction which could be gradually increased. (Tr. at 104.) After a follow-up examination in early August 2001, Dr. Wasfie stated that Plaintiff could resume work the next month with a weight lifting restriction of 40 pounds which could be increased gradually if there were no symptoms of recurrence over the next two or three months. (Tr. at 102.) In mid-August 2001, the doctor forwarded a letter to another physician describing the hernia repair surgery and stating that Plaintiff "is now discharged from my care." (Tr. at 100.)

In mid-January 2002, after an MRI scan of Plaintiff's shoulders indicated the presence of severe arthritis in the AC joint of the left shoulder and moderate arthritis in the right shoulder, Plaintiff underwent an injection of Xylocaine and Depo Medrol into the right shoulder. (Tr. at 120.) Thereafter, Plaintiff reported "a fair amount of relief." (Tr. at 119.)

In mid-May 2002, Plaintiff was seen by Dr. Anthony DeFranco after an episode of "poking, stabbing" pain. (Tr. at 123.) The doctor felt that this discomfort was "certainly noncardiac in origin." (*Id.*) The doctor nonetheless sent Plaintiff for further testing. In mid-July 2002, Plaintiff underwent a stress echocardiogram test. The doctor reported that Plaintiff had no symptoms and that the "electrocardiogram was normal and [he] had normal stress echocardiogram. Thus, the posterior inferior reversible defect [earlier found] by the nuclear scan was not confirmed." (Tr. at 138.) The doctor diagnosed no evidence of obstructive coronary disease. (*Id.*)

At the administrative hearing, a vocational expert (VE) testified. The VE referred to an earlier form he had completed indicating that Plaintiff's prior work was skilled and heavy in

7

exertion. (Tr. at 89, 192.) In response to a hypothetical question, presuming a person capable of undertaking light work which involved no overhead reaching with either arm and which involved lifting limited to moving items from one counter to another, no bending at the waist, only occasional bending at the knees or kneeling, no crawling, only the occasional climbing of stairs, and no climbing of ladders, the VE opined that such a person could not perform Plaintiff's prior work. (*Id.*) The VE also opined that Plaintiff's skills would not transfer to any positions consistent with this hypothetical. (Tr. at 192-93.) The VE then identified 61,000 cashier jobs consistent with these hypothetical conditions, 6,000 inspector, 1,800 information clerk and 18,000 assembly jobs. (*Id.*) In response to an added hypothetical condition requiring the person to be seated for approximately 50% of the work day, the VE stated that all the jobs previously identified, with the exception of the assembly positions, would be precluded. (*Id.*)

    **E.**    **ALJ Findings**

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since the onset of disability. (Tr. at 19.) At step two, the ALJ found that Plaintiff's impairments were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*) At step four, the ALJ found that Plaintiff could not perform his previous work. (*Id.*) At step five, the ALJ denied Plaintiff benefits because Plaintiff could perform a significant number of jobs available in the national economy. (*Id.*)

**F.     Analysis and Conclusions**

**1.     Legal Standards**

The ALJ determined that Plaintiff possessed the residual functional capacity to return to a significant range of light work. (Tr. at 19.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

**2.     Substantial Evidence**

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. In this circuit, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Although Plaintiff suffers impairments resulting from his repeated hernia surgeries, as well as shoulder problems, I suggest that on this record substantial evidence supports the findings of the ALJ. Even after Plaintiff's hernia surgeries, none of Plaintiff's treating physicians ever

9

restricted his lifting to an extent less than that allowed by the Commissioner's definition of light work. (Tr. at 98, 102, 104.) Although a nuclear imaging of Plaintiff's heart revealed potential abnormalities (Tr. at 129), a later stress echocardiogram testing failed to confirm the presence of the defect. (Tr. at 138.) While Plaintiff was found to have arthritis in both shoulders, Plaintiff's treating physician reported that Plaintiff got "quite a bit of relief" after an injection treatment. (Tr. at 119.) In addition, the Plaintiff's medical history as depicted in this record is devoid of evidence that Plaintiff suffered any meaningful impairment to the function of his hands inconsistent with the fine dexterity limitations stated in the Commissioner's definition of light work. I therefore suggest that Plaintiff has failed to meet his burden of establishing "disability" within the meaning of the Social Security Act.

Plaintiff's counsel's primary argument is that the hypotheticals posed to the VE were defective. Counsel particularly takes issue with the ALJ's finding that Plaintiff could undertake "occasional fingering," contending that the ALJ improperly failed to include this limitation in his hypothetical questions to the VE. After review of the record, I suggest that the ALJ posed proper hypothetical questions. *Casey v. Sec'y of Health & Human Servs.,* 987 F.2d 1230, 1235 (6th Cir. 1993). The ALJ's hypothetical question specifically took into account the limitations of lifting found by Dr. Wasfie, the shoulder impairments described by Dr. Burton, and the results of Plaintiff's stress echocardiogram. I therefore suggest that counsel's contentions fail to pass muster.

Social Security regulations prescribe a two-step process for evaluating subjective complaints of pain. The plaintiff must establish an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain rising from the condition, or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. 20 C.F.R. § 404.1529(b) (1995); *Jones v.*

*Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). If a plaintiff establishes such an impairment, the ALJ then evaluates the intensity and persistence of the plaintiff's symptoms. 20 C.F.R. § 404.1529(c) (1995); *Jones*, 945 F.2d at 1369-70. In evaluating the intensity and persistence of subjective symptoms, the ALJ considers objective medical evidence and other information, such as what may precipitate or aggravate the plaintiff's symptoms, what medications, treatments, or other methods plaintiff uses to alleviate his symptoms, and how the symptoms may affect the plaintiff's pattern of daily living. *Id.* When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility."); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at **3 (6th Cir. Ohio Feb. 11, 1999).

In the present case, the ALJ acknowledged that Plaintiff had an impairment that could cause pain; however, he found that the severe and debilitating nature of Plaintiff's alleged pain was not fully credible and provided reasons for this conclusion. The issue is whether the ALJ's credibility determinations are supported by substantial evidence. An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Under this standard, I suggest that there is insufficient basis on this record to overturn the ALJ's credibility determination.

After review of the record, I conclude that the decision of ALJ Jones, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Mullen*, 800 F.2d at 545, as the decision is supported by substantial evidence.

### III.  REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n. of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                          s/ *Charles E. Binder*
                                                          CHARLES E. BINDER
Dated: October 20, 2005                      United States Magistrate Judge

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and electronically served on Janet L. Parker and Mikel E. Lupisella.

Dated:  October 20, 2005                                        By    s/Mary E. Dobbick
                                                                         Secretary to Magistrate Judge Binder